## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CAROL MOCK** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. CIV-05-1266-HE** |
| | ) |
| **JO ANNE B. BARNHART,** | ) |
| **Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security Administration (Commissioner) denying her applications for disability insurance benefits and supplemental security income benefits. Pursuant to an order entered by United States District Judge Joe Heaton, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)( B). The Commissioner has answered and filed the administrative record (hereinafter Tr. ____). Both parties have briefed their respective positions and thus the matter is at issue. For the reasons stated herein, it is recommended that the decision of the Commissioner be reversed and the matter be remanded for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed concurrent applications for disability insurance benefits and supplemental security income benefits on February 12, 2003, alleging a disability onset

date of October 2002. Tr. 57-60, 76, 303[1]. She alleged that she was disabled due to being bipolar with psychotic features. Tr. 57. The applications were denied on initial consideration and on reconsideration at the administrative level. Tr. 28, 29, 30-32, 35-37, 303, 304, 305-06. At Plaintiff's request, a hearing de novo was held before an administrative law judge on September 23, 2004. Tr. 38, 309-323. Plaintiff appeared in person and with her attorney and offered testimony in support of her applications. Tr. 311-320. A vocational expert testified at the request of the administrative law judge. Tr. 47, 320-22. The administrative law judge issued his decision on February 12, 2005, finding that Plaintiff was not disabled within the meaning of the Social Security Act and that she was not entitled to either disability insurance benefits or supplemental security income benefits. Tr. 15-17, 18-24. The Appeals Council denied Plaintiff's request for review on August 31, 2005, and thus the decision of the administrative law judge became the final decision of the Commissioner. Tr. 7-9, 10.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review as follows:

> We review the agency's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. However, a decision is not based on substantial evidence if it

---

[1] There is no copy of Plaintiff's application for supplemental security income benefits in the record. The "Disability Determination and Transmittal" form indicating the denial of supplemental security income benefits shows the filing date of Plaintiff's supplemental security income application as February 12, 2003. Tr. 303. Additionally, the alleged date of onset contained in Plaintiff's disability insurance benefits application is October 2002. An earlier date of January 1, 1990 was adopted by Plaintiff at some point in time, and at the hearing she amended her alleged onset date to October 1, 2002. Tr. 18, 312.

is overwhelmed by other evidence in the record or if there is a mere
scintilla of evidence supporting it.  The agency's failure to apply correct
legal standards, or show us it has done so, is also grounds for reversal.
Finally, because our review is based on the record taken as a whole, we will
meticulously examine the record in order to determine if the evidence
supporting the agency's decision is substantial, taking into account
whatever in the record fairly detracts from its weight.  However, we may
neither reweigh the evidence nor substitute our discretion for that of the
Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotations and

citations omitted).  The Commissioner follows a five-step sequential evaluation process

to determine whether a claimant is disabled.  Williams v. Bowen, 844 F.2d 748, 750-52

(10th Cir. 1988).  The claimant bears the burden of establishing a prima facie case of

disability at steps one through four.  Id. at 751 & n. 2.  If the claimant successfully meets

this burden, the burden of proof shifts to the Commissioner at step five to show that the

claimant retains sufficient residual functional capacity to perform work in the national

economy, given his age, education, and work experience. Id. at 751.

III.    THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge

followed the sequential evaluation process set forth in 20 C.F.R. § 404.1520 and 20 C.F.R.

§ 416.920.  Tr. 19.  He first found that Plaintiff had not engaged in substantial gainful

activity since the alleged disability onset date.  Tr. 19, 23.  At step two, the administrative

law judge found that Plaintiff has a history of asthma and bronchitis, a bipolar disorder

with psychotic features, and a history of alcohol abuse, which are "severe."  Tr. 20, 23.

At step three, the administrative law judge determined that these severe impairments

were not severe enough to meet or equal any of the impairments listed in 20 C.F.R. Part

404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr. 20, 23.  He next found that Plaintiff  had the residual functional capacity to perform a wide range of light work. Tr. 21, 23.  He also imposed non-exertional limitations, concluding that Plaintiff must work in relative isolation with limited contact with her peers and supervisors, that she cannot be exposed to pollutants, dust, or fumes on an extended basis, and she is limited to the performance of routine, repetitive, and low stress work.  Tr. 21, 23.  Based on this residual functional capacity, the administrative law judge found at Step Four of the sequential evaluation process that Plaintiff was not able to perform her past relevant work.  Tr. 22, 23. However, based upon Plaintiff's residual functional capacity and vocational factors, the administrative law judge found that there were light jobs that Plaintiff could perform, such as photocopying machine operator and folding inserting machine operator.  Tr. 22, 23. Thus, the administrative law judge found that Plaintiff was not disabled and was not entitled to benefits.  Tr. 22, 24.

## IV.     ISSUES ON APPEAL

Plaintiff raises three issues on appeal.  First, the Plaintiff claims that the administrative law judge erred in his determination that her arthritis was not severe. Plaintiff's Opening Brief, p. 7-10.  In her second claim, the Plaintiff alleges that the administrative law judge erred in assessing her residual functional capacity.  Plaintiff's Opening Brief, p. 10-14.  In her third claim, Plaintiff argues that the administrative law judge erred in his credibility assessment.  Plaintiff's Opening Brief, p. 14-16.

## V.  DISCUSSION

### A.  Plaintiff's Severe Impairments

The Plaintiff alleges that the administrative law judge erred in failing to find that her arthritis was a "severe" impairment at step two of the sequential analysis.  Plaintiff contends that the diagnosis of arthritis was made by a Healing Hands Health Care Service, including a notation that Plaintiff's hands were beginning to show signs of deformity as a result of the arthritis.[2]  Plaintiff's Opening Brief, p. 8.  Plaintiff argues that the administrative law judge's failure to discuss this evidence violated <u>Clifton v. Chater</u>, 79 F.3d 1001 (10th Cir. 1996), requiring the administrative law judge to discuss the uncontroverted evidence upon which he does not rely.  Plaintiff's Opening Brief, p. 8.

The Commissioner argues that because the diagnosis of arthritis was made by an advanced registered nurse practitioner (A.R.N.P.), that the administrative law judge was not required to give the opinion controlling weight nor was he required to specifically delineate the weight he was going to give the opinion.   Brief in Support of the Commissioner's Decision, p. 4.

At step two of the sequential analysis, a claimant must prove that she has a medically severe impairment or combination of impairments that significantly limits her ability to do basic work activities.  20 C.F.R.  §§ 404. 1521(a), 416.921(a).  "Basic work activities are 'abilities and aptitudes necessary to do most jobs.'"  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir. 2004) (quoting 20 C.F.R.  § 404.1521(b)); see also 20 C.F.R.

---

[2] Plaintiff also argues that she was prescribed Medrol on July 1, 2004 to treat pain.  Review of the treatment records for that date indicate that Plaintiff was treated for chronic obstructive pulmonary disease, not pain.  Tr. 265.  Medrol, is a type of steroid, and it appears that it was prescribed on July 1, 2004 for Plaintiff's lungs, not her hands.  Tr. 265.

§ 416.921(b)).  "The step two severity determination is based on medical factors alone...."

Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir.2003).  Although step two requires

only a "de minimis" showing of impairment, a "claimant must show more than the mere

presence of a condition or ailment."   Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th

Cir.1997).

The specific medical record with which Plaintiff takes issue was made by Sherry

Silverstein, A.R.N.P. on November 26, 2002, and it noted a diagnosis of arthritis, stating

that "[f]ingers are definitely beginning to be deformed from the arthritis."  Tr. 290.  The

Commissioner is correct that this diagnosis of arthritis with accompanying anatomical

changes was not made by an "acceptable medical source."  20 C.F.R.  §§ 404.1513(a)

416.913(a).[3]  Accordingly, the administrative law judge was not required to give the

opinion controlling weight or to discuss the opinion as if it was an opinion of a treating

physician.  However, the administrative law judge failed to note the subsequent diagnosis

of arthritis made by Priya Samant, M.D., on February 12, 2003, where she prescribed

Naprosyn.  Tr. 281.  Additionally, Plaintiff sought medication for her arthritis on April

29, 2003 and was prescribed Celebrex.  Tr. 278.  The administrative law judge did not

mention either of these medical opinions in his decision.

---

[3] The Commissioner also urges the Court to take notice of the fact that two weeks after the diagnosis of arthritis that a treating physician reported that Plaintiff's "bimanual exam was within normal limits." Brief in Support of the Commissioner's Decision, p. 4, citing Tr. 288.  Review of the record at Tr. 288 indicates that Plaintiff was seen for a routine gynecological examination, and a "bimanual exam" is part of such an examination, not a test designed to evaluate hand and finger function.  See A-Z Health Guide from WedMD: Medical Tests, WebMD, http://www.webmd.com/hw/healthy_women/aa80229 (accessed June 15, 2006).

Plaintiff bears the burden of establishing more than a diagnosis at step two.  She must establish via medical evidence that her arthritis causes her significant limitations in basic work activities.   The Commissioner defines "basic work activities" as the "abilities and aptitudes necessary to do most jobs."  20 C.F.R.  § 404.1521(b), 416.921(b). Examples include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling."  Id.  Plaintiff has failed to establish that her arthritis caused her significant limitation in her ability to do any of the above, including handling, the most relevant example where a claimant alleges arthritis in her hands.  Plaintiff testified that she had some problem with buttoning and zippering and that sometimes she might have a hard time picking up pennies individually.  Tr. 314. This evidence in and of itself is insufficient to establish that Plaintiff's arthritis significantly limits her ability to do basic work activities.  Accordingly, the undersigned concludes that the administrative law judge's analysis of Plaintiff's arthritis does not provide a basis for remand of this matter.

The Plaintiff also alleges that the administrative law judge failed to develop the record, because he has a duty to obtain pertinent medical records when he becomes aware of them.  Plaintiff does not specify what medical records are missing or what such records would indicate.  As noted recently by the Tenth Circuit, Plaintiff's claim is too general.  The Court does "not know if the records [she] thinks the [administrative law judge] should have obtained are pertinent or available."  Madrid v. Barnhart, 447 F.3d 788, 792 (10th Cir. 2006).

Finally, Plaintiff alleges that the administrative law judge should have ordered a consultative examination with regard to her arthritis.  An administrative law judge "has broad latitude in ordering a consultative examination." Diaz v. Secretary of Health and Human Servs., 898 F.2d 774, 778 (10th Cir. 1990).  "[W]here there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997)(citations omitted).  The administrative law judge "does not have to exhaust every possible line of inquiry," as "[t]he standard is one of reasonable good judgment." Hawkins, 113 F.3d at 1168.  Although it would have been within the administrative law judge's province to order a consultative examination, the facts of Plaintiff's case did not mandate that he request such an examination with regard to Plaintiff's arthritis.

**B.  Plaintiff's Residual Functional Capacity**

In her second proposition of error the Plaintiff alleges that the administrative law judge erred because he failed to consider her low GAF scores in assessing her residual functional capacity.

Plaintiff contends that her inability to maintain employment is established by a history of low GAF scores.  The administrative law judge did not address Plaintiff's GAF scores and did not include any GAF scores in his hypothetical question to the vocational expert.  Accordingly, Plaintiff argues, the administrative law judge's decision is not supported by substantial evidence.

"GAF" stands for "Global Assessment of Functioning," and the GAF scale is used by clinicians to report an individual's overall level of functioning. <u>See</u> American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders, p. 32 (Text Revision 4th ed.2000) (DSM-IV).  Plaintiff's history includes GAF scores as low as 35 and as high as 60.[4]  Tr. 126, 128, 147, 151, 154-55, 173, 177, 192, 216.  A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work ..., family relations, [or] judgment," while a GAF of 41-50 indicates "[s]erious symptoms ... OR any serious impairment in social or occupational . . . functioning."  DSM-IV, at 34 (emphasis deleted).  A GAF between 51 and 60 reflects "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, conflicts with peers or co-workers)." <u>Id.</u> (emphasis deleted).

The Commissioner correctly notes that low GAF scores standing alone, without any further narrative explanation, do not automatically support an impairment seriously interfering with a claimant's ability to work.  <u>See</u> <u>Howard v. Commissoner of Social Sec.</u>, 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the [administrative law judge] in formulating the [residual functional capacity], it is not essential to the [residual functional capacity's] accuracy."); <u>Camp v. Barnhart</u>, No. 03-7132, 2004 WL 1465777, at *1 (10th Cir. June 30, 2004) (citing <u>Howard</u> and concluding

---

[4] Plaintiff was assigned a GAF of 35 on July 11, 2000 when she was admitted to treatment at Griffin Memorial Hospital after a court commitment from the District Court of Oklahoma County.  Tr. 126. Plaintiff's GAF of 60 was upon discharge from Griffin Memorial Hospital on July 21, 2000, when she was medicated and responding well to treatment.  Tr. 128.  After her alleged onset date Plaintiff was only given GAF scores on two occasions.  On February 13, 2003, Plaintiff was assigned a GAF of 42 and on February 26, 2003 her GAF was 40.  Tr. 173, 177, 216.

that a GAF of 50 "without evidence that it impaired [the claimant's] ability to work, does not establish an impairment"); <u>Zachary v. Barnhart</u>, No. 03-7032, 2004 WL 790300, at *2 (10th Cir. April 14, 2004)(quoting <u>Howard</u> and noting that administrative law judge was not required to discuss GAF scores)[5].

Contrary to Plaintiff's contention, her low GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. <u>See</u> <u>id</u>. Thus, standing alone, Plaintiff's low GAF scores do not evidence an impairment seriously interfering with her ability to work. None of Plaintiff's treating physicians ever opined that Plaintiff could not work, and because no GAF score was ever specifically tied to Plaintiff's ability to work, the administrative law judge's failure to rely on Plaintiff's GAF scores in assessing her residual functional capacity does not provide a basis for remanding this matter.

Within this argument Plaintiff raises an additional argument regarding the administrative law judge's analysis of the opinions of her treating physician and his assessments of her during the relevant time period. In assessing the records submitted from Plaintiff's treating physician, the administrative law judge noted the following:

> Upon mental status examinations conducted in February 2003 relevant negative findings included good eye contact, cooperative demeanor, clear and coherent speech without pressure, the absence of flights of ideas or thought of hurting herself or others, intact memory, appropriate dress and grooming, estimated average intellectual functioning, and normal behavior and motor activities (Exhibits 4F and 7F). An absence of hallucinations or delusions was noted in December 2003 and upon mental status examination conducted in May 2004 relevant negative findings included appropriate physical appearance and affect, normal speech, orientation in all spheres, and cooperative interaction (Exhibit 10F).

---

[5] These and any other unpublished decision cited herein as persuasive authority pursuant to Tenth Circuit Rule 36.3.

Tr. 21.  The administrative law judge, however, did not note any of the findings in the record that supported Plaintiff's claims of a disability or of a more limited residual functional capacity.  Specifically the administrative law judge did not acknowledge or explain his failure to adopt the findings by Plaintiff's treating physician on February 26, 2003 that Plaintiff was anxious, with some restlessness and that she had perceptual distortions and paranoia.  Tr. 216.  Jahangir H. Ghaznavi, M.D., noted on that date that Plaintiff had poor judgment and that she may have decreased attention and concentration.  Tr. 216.  Although the administrative law judge recited the portions of Dr. Ghaznavi's report that support a finding of non-disability, he did not cite to any of the report that would support a finding of disability.

Similarly, the administrative law judge noted the "relevant negative findings" from a May 2004 mental status examination without noting and explaining his failure to consider Dr. Ghaznavi's finding that Plaintiff was anxious, that both delusions and hallucinations were present, and that Plaintiff's sleep was decreased.  Tr. 246.

In light of the well established principle that an administrative law judge "may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability", Hamlin v. Barnhart, 365 F.3d 1208, 1219 (10th Cir.2004), the administrative law judge in this case erred by citing only to "relevant negative findings" without explaining why the findings that supported Plaintiff's alleged disabling condition were not regarded.  As noted by the Plaintiff, when considering the opinion of a treating physician, an administrative law judge must explain the weight given to a treating physician's opinion, even when the opinion is not

11

considered controlling.  Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  The administrative law judge must supply "good reasons" for the weight ultimately given to the treating doctor's opinion.  Id. at 1301 (citing 20 C.F.R. § 404.1527(d)(2)).  Because in Watkins the administrative law judge failed to articulate the weight given to the treating doctor's opinion, remand was necessary.  The Court explained:

> Here, the [administrative law judge] failed to articulate the weight, if any, he gave [the treating physician's] opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether. We cannot simply presume the [ administrative law judge] applied the correct legal standards in considering [the treating physician's] opinion.  We must remand because we cannot meaningfully review the [administrative law judge's] determination absent findings explaining the weight assigned to the treating physician's opinion.

Id. (citing Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001)); Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004).  In this case, although the administrative law judge stated that he was considering all of the evidence in the record, his analysis indicates that he failed to fulfill his obligation to explain why he was not finding that Plaintiff suffered from delusions and hallucinations, or why the reports of her treating physician cited above were not controlling.  "[W]hile [the administrative law judge] is not required to discuss every piece of evidence in the record, he 'must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.'"  Threet v. Barnhart, 353 F.3d 1185, 1190 (10th Cir.2003) (quoting Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir.1996)).  Accordingly, although Plaintiff's low GAF scores alone do not require remand of this matter, the administrative law judge's treatment of Plaintiff's treating physician opinions regarding her mental health and his

decision to discuss only the testimony favorable to his decision was insufficient, and therefore the undersigned recommends remand of this matter.

### C.  The Administrative Law Judge's Credibility Analysis

Finally, Plaintiff contends that the administrative law judge erred in assessing her credibility.  Plaintiff argues that the administrative law judge did not properly consider her impairments, relying on boilerplate language to reject her subjective complaints.  The Commissioner argues that the administrative law judge's credibility analysis was sufficient.

"When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Social Security Ruling 96-7p, 1996 WL 374186, at *1.  Some of the factors that may be considered in assessing a claimant's credibility as to her disabling pain include (1) her  daily activities; (2) the location, duration, frequency, and intensity of her pain; (3) factors that precipitate and aggravate the pain; (4) the type, dosage, effectiveness, and side effects of any medication she receives or has received for relief of pain; (5) treatment, other than medication, the claimant has received for relief of pain; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  Social Security Ruling 96-7p, 1996 WL 374186, * 3; 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3); Luna v. Bowen, 834 F.2d 161, 164-66 (10th Cir. 1987).  In assessing a claimant's credibility, an administrative law judge must state the

13

evidence upon which he relies.  <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).

He is not, however, required to undertake a factor-by-factor analysis and discuss every

piece of evidence in the record.  <u>Id.</u>

Here, the administrative law judge acknowledged the governing standard and

stated that he had evaluated the evidence in compliance with that standard.  Tr. 20.  He

summarized the Plaintiff's testimony:

> The claimant testified that she is disabled due to emphysema with
> shortness of breath; right shoulder pain; a bipolar disorder with symptoms
> including depression, confusion, difficulty being around others, and
> memory problems; and arthritis in the hands and fingers with associated
> pain.  The claimant indicated that her pulmonary condition is aggravated
> by exposure to fumes.  As a side effect of the use of medication to treat her
> psychiatric condition, the claimant complained of drowsiness.  Regarding
> her functional restrictions the claimant described limitations on gross and
> fine finger dexterity and reaching.  Regarding her daily activities, the
> claimant testified that she lives in the city rescue mission.

Tr. 20.  The administrative law judge then summarized the findings of the two non-

examining agency physicians with regard to Plaintiff's mental condition.  Tr. 20.  He

subsequently continued his credibility analysis.

> In addition, the undersigned notes that the claimant's complaints of right
> shoulder pain and arthritis in the hands and fingers of such severity as to
> have affected the claimant's ability to work for any period of twelve months
> of (sic) longer are unsupported by the documentary record.  In addition, in
> May 2002 the claimant was seen by a physician with complaints of
> difficulty breathing.  She was treated conservatively and instructed to
> return if her symptoms persisted; there is no evidence that the claimant
> sought follow-up treatment (Exhibit 11F).

Tr. 21.  He concluded with the summary of her mental status as set forth above, noting

that at certain examinations it was determined that Plaintiff was not suffering from

delusions or hallucinations, without reference to any contrary reports.  Finally, the

administrative law judge stated "[t]he undersigned finds the claimant's allegations regarding her limitations are not totally credible." Tr. 21.  He continued by setting forth his residual functional capacity findings, without any further discussion of Plaintiff's credibility.  Tr. 21.

The undersigned agrees with the Plaintiff that the administrative law judge's credibility analysis falls short of the requirements of Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987), because the administrative law judge failed to indicate that he had considered many of the factors that are pertinent to a credibility analysis.  The crux of this case is Plaintiff's mental health; and from the record it is apparent that she has a history of difficulty in this realm.  As set forth above, the administrative law judge's only discussion of the evidence with regard to Plaintiff's mental health was to evidence that supported his findings.  He made no mention about any aspects of her mental health treatment that could support a finding of disability and he failed to indicate why he did not find Plaintiff's testimony regarding the side effects of her medication to be credible.  Tr. 316. The administrative law judge did not discuss Plaintiff's attempts at alleviating her mental illness or the success of the attempts.  Despite substantial evidence in the record regarding the nature of Plaintiff's mental illness, including her hallucinations, her delusions and her paranoia, her medications, the side effects and her attempts at treatment, the administrative law judge discussed only three of the treatment records in rejecting her credibility and concluding that despite her bipolar disorder she was nevertheless capable of working a forty-hour week.  Because the administrative law

judge's credibility assessment falls short, the undersigned recommends that this matter be remanded for further administrative proceedings.

### VI.  RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the final decision of the Commissioner of Social Security Administration be reversed and the matter be remanded for further administrative proceedings consistent with this Report and Recommendation.  The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by July 24, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 3rd day of July, 2006.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE